**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

UNITED STATES OF AMERICA,

Plaintiff,

vs.

BRIAN ALLAN TALBOTT,

Defendant.

4:26-cr-00004-RRB-SAO

**REPORT AND RECOMMENDATION[1]**
**ON DEFENDANT'S MOTION**
**TO DISMISS FORFEITURE ALLEGATION**

**(Docket 21)**

## I. INTRODUCTION

Defendant, Brian Allan Talbott, was charged with one count of Felon in Possession of a Firearm pursuant to 18 U.S.C. § 922(g)(1) and § 924(a)(8) on March 18, 2026.[2] Defendant pled guilty on June 2, 2026, and the Court accepted the plea.[3] Imposition of sentence is now set for August 17, 2026.[4]

Defendant moves for an order dismissing the forfeiture allegation contained in the indictment.[5] He claims that seizure of his items by the federal government occurred in November 2023 so the forfeiture allegation must be dismissed because the government failed to commence "[a]ny action or proceeding for the forfeiture of firearms or ammunition" within 120 days of seizure, as set forth in 18 USC § 924(d)(1). The government responded that the 120-day clock, set

[1] This report and recommendation is issued as a final report and recommendation. Pursuant to Fed. R. Crim. P. 59(b)(3), any objections will be considered by the District Judge who will accept, reject, or modify the recommendation, or resubmit the matter to the Magistrate Judge for additional consideration and recommendations.
[2] Docket 2.
[3] Docket 27.
[4] Docket 42.
[5] Docket 21.

forth in 18 USC § 924(d)(1), only started once the federal government took physical possession of the rifle on April 16, 2026, and therefore the motion to dismiss should be denied.[6]

The court held an evidentiary hearing on the motion on July 9, 2026, where Alaska State Trooper and FBI Task Force Officer Curtis Vik testified. Defendant submitted a written response after the hearing restating his argument under 18 U.S.C. § 924(d) and discussing civil forfeiture under the Civil Asset Forfeiture Reform Act of 2000 (CAFRA).[7]

The Court RECOMMENDS the Motion to Dismiss the forfeiture allegation be GRANTED.

## II. FACTS

The defendant pled guilty to Count 1 of the indictment which forbids any person "…who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year…" from possessing any firearm that has traveled in interstate commerce.[8] Defendant did not enter into a written plea agreement but agreed to the following facts at his change of plea hearing:

> On September 26, 2023, while leaving in his boat for a moose hunting trip, and on October 12, 2023, while living in the woods in a tent, both near Fort Yukon and within the District of Alaska, Brian Talbott did knowingly possess, in and affecting interstate and foreign commerce, firearms and ammunition, that is a Winchester Ranger .30 caliber rifle and .30 caliber ammunition. At the time of his possession Brian Talbott knew that he had previously been convicted by the Superior Court of Alaska of crimes punishable by imprisonment for a term exceeding one year, including a 2023 conviction for First Degree Vehicle Theft and a 2011 conviction for felony DUI.[9]

---

[6] Docket 30.
[7] Docket 39 at 3.
[8] 18 U.S.C. § 922(g)(1) and § 924(a)(8).
[9] From the Notice of Intent to Change Plea submitted on May 18, 2026, at Docket 20.

The firearms and ammunition named in the forfeiture allegation were seized by the Alaska State Troopers (AST) in October 2023 when Talbott was contacted by Troopers as part of a state investigation. The items were placed in the AST evidence room. The State of Alaska investigated and charged Talbott. Talbott's Alaska criminal case was closed in 2024. The items remained in AST custody.

Officer Curtis Vik has been an Alaska State Trooper on assignment to the Federal Bureau of Investigation (FBI) as a Task Force Officer (TFO) since at least the beginning of 2023 where he has worked full-time in the FBI office. He has been deputized by the FBI and the U.S. Marshals to work on a federal task force. In mid-December 2024 TFO Vik opened an FBI case into Talbott involving the firearm and ammunition as directed by his supervisor. The next day TFO Vik contacted the AST evidence custodian and placed a "hold" on the seized items for potential future federal charges by asking AST to retain the firearm and ammunition so that "it did not get disposed of by the state."[10] [11]

AST did as requested and kept the firearm and ammunition in the Fairbanks evidence room from December 2024 until April 7, 2026. AST took this action solely due to the direction from TFO Vik, as the State of Alaska case against Talbott had resolved by December 2024. While AST was holding the firearm and ammunition in their evidence room at TFO Vik's request the items would not be released to Talbott or a third party or disposed of by any state agency without

---

[10] TFO Vik testimony on July 9, 2026.

[11] As a TFO he occasionally worked on matters separately for the Alaska State Troopers outside of matters being investigated federally. TFO Vik first became aware of Talbott and the firearm in November 2023 when AST asked him to perform an e-trace of the evidence. However, he only performed that action to assist AST and he was not involved with the state of Alaska proceedings or state of Alaska court case.

the permission of TFO Vik regardless of any State of Alaska processes authorizing return of property to Talbott.

On March 17, 2026, Brian Talbott was indicted in a federal case in the District of Alaska.[12] On April 7, 2026, TFO Vik asked AST to send the firearm from Fairbanks to the AST Evidence Room near their crime lab in Anchorage. On April 16, 2026, TFO Vik physically picked up the items from AST and placed them into FBI evidence in Anchorage. The only civil or criminal federal action or proceeding for the forfeiture of items described was that of the criminal forfeiture allegation contained in the March 17, 2026, Federal indictment.

## III. DISCUSSION

The first issue is whether the time restriction in 18 USC § 924(d) applies to a criminal forfeiture allegation contained in an indictment pursuant to 28 USC § 2461. The government suggests that a reading of the two statutes in combination "yields the conclusion that the 120-day period of 18 § 924(d)(1) applies to separate civil forfeiture proceedings, and not notices of forfeiture filed as addenda to criminal indictments pursuant to 28 USC § 2461(c)."[13] Based on the plain language of the statutes and the lack of contradictory authority, the Court disagrees.

28 USC § 2461 states that "[i]f a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure." In turn, the last sentence of 18 USC § 924(d)(1) states

---

[12] Docket 1.
[13] Docket 30 at 4, citing *United States v. Karriem*, 2008 WL 5118200, at *9 (D.N.J. Dec. 4, 2008).

"Any action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such seizure." Reading the statutes as the government suggests renders the last sentence of §924(d) meaningless. The language of §924(d)(1), in its use of the phrase "any action or proceeding," is broad and clear. If Congress had intended it to only apply to civil forfeiture proceedings it could have easily been crafted with that limitation.

The court also concludes that the time limit of 120 days in 18 § 924(d)(1) applies if no civil forfeiture action is ever filed. The facts of our case are distinguishable from other cases that have addressed the application of the time period in 18 USC 924(d). For instance, the Seventh Circuit found that "the time limitation in 924(d)(1) merely requires the United States to initiate *either an administrative forfeiture proceeding or a judicial forfeiture action within 120 days of seizure.*"[14] In this case, there are no administrative forfeiture procedures. Accordingly, the court must look at the timing of the criminal forfeiture allegation.

The moving party must bear the initial burden to show that the government failed to commence action within 120 days under 18 § 924(d)(1).[15] After such a preliminary showing the burden then shifts to the government.[16] The main point of contention is who took possession of Defendant's items and when. The government argues that the 120-day limit clock should not start until the federal government has *taken possession* of the weapon.

[14] *United States v. Miscellaneous Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 713 (7th Cir. 2004)(emphasis added).
[15] *United States v. Fifty-Two Firearms*, 362 F. Supp. 2d 1308 (M.D. Fla.), *aff'd*, 362 F. Supp. 2d 1323 (M.D. Fla. 2005).
[16] *See United States v. Twelve Miscellaneous Firearms*, 816 F. Supp. 1316 (C.D. Ill. 1993); and *United States v. Ninety Three Firearms*, 330 F.3d 414 (6th Cir. 2003).

Given limited cases that address the topic, both sides pointed to an unreported case from another district, *United States v. Karriem*.[17] Karriem has been cited several times within the Third Circuit. In *Karriem* the defendant was a felon found in possession of a gun, which was then seized by City of Newark police. Notice of forfeiture was not given to the defendant until more than 120 days later when the federal indictment was issued. The defendant made the argument that the seizure by state police started the 120-day clock and that the notice being filed with the indictment after that period violated 18 USC § 924(d). The government argued that they did not have jurisdiction to issue the notice of forfeiture until the indictment was filed, and that the clock did not start until the date of the indictment. The *Karriem* court ruled that the 120-day clock started when the federal government seized the weapon, finding that "the limitations period did not begin to run until the [federal] Government asserted jurisdiction over Defendant by way of the Indictment itself" and denied the motion to dismiss the forfeiture allegation.[18]

Karriem, makes note of the fact that "courts have routinely allowed, without comment, forfeiture allegations in criminal indictments based on 'delays' far longer than that here."[19] While

---

[17] 2008 WL 5118200 (D.N.J. Dec. 4, 2008).
[18] *Id*.
[19] *Id*. at *9, citing *United States v. Kubowksi,* 85 F. App'x 686, 687 (10th Cir.2003) (failing to discuss any limitations issue where weapons seized in February 2001, and indictment with forfeiture request not filed until December 2001); *United States v. Hayden,* No. 07–68, 2008 WL 2783269, at *1 (N.D.Ind. Jul.16, 2008) (declining to mention any limitations issue where gun seized on March 9, 2007 and indictment with forfeiture allegation filed July 25, 2007); *United States v. Thomas,* No. 07–3034, 2008 WL 1774153, at *1 (N.D.Iowa Apr.16, 2008) (failing to recognize any limitations issue where firearm seized in December 2006 and indictment with forfeiture allegation issued in August 2007); *United States v. Henderson,* No. 05–78, 2005 WL 3263912, at *1 (N.D.Iowa Nov.30, 2005) (omitting any mention of a limitations issue where firearm seized in October 2004 and indictment with forfeiture provision filed in September 2005); *United States v. Mejia,* No. 05–32, 2005 WL 2476215, at *1 (E.D.Pa. Oct.6, 2005) (failing to note any limitations problem where firearm seized in October 2004 and indictment with forfeiture allegation filed in January 2005).

all these cases cited by *Karriem* present different temporal scenarios, they are united in their failure to address the 120-day limit.

The caselaw indicates that, when the federal government takes possession of an item, the 120-day time limit imposed by 18 USC § 924(d) begins to run and the federal government must begin some sort of proceeding regarding the seizure/forfeiture of the item within that time limit. That proceeding may be either administrative or judicial, and may be part of the indictment itself. The above caselaw shows that if a state entity is the one to first seize an item, the 924(d) time limit does not begin to run until the federal government takes custody of the item.

In this case, the items in question in this forfeiture action were physically seized by Alaska actors in November 2023 and transferred to physical possession to an FBI task force officer in April of 2026. However, TFO Vik, in his capacity as a federal deputy serving the FBI, placed a "hold" for "future federal charges" on the items in question in December 2024. TFO Vik's "hold" placed the firearms and ammunition effectively in the possession because the items at that time were in the custody and control of the federal government. After Defendant's state case was dismissed in 2024, the state had no reason to retain the items so they would have been disposed of and potentially returned to their owner through a state firearm forfeiture processes. That is the precise reason TFO Vik had to contact AST to tell them to hold the items. Even though they remained in the physical possession of the state, Federal law enforcement had control of the items and exerted control over the items, asking the state to hold the items for them. This federal control executed over the items prevented the state from doing anything but holding the items. TFO Vik's actions were specifically designed to prevent the disposal or return of the items to the

defendant. This control by the FBI began in December of 2024 and continued through April 2026 when the items were given to the FBI evidence room personnel. Both *Karriem* (here cited by the government) and *Misc. Firearms* (a circuit court case) agree that once the federal government has taken custody of the items to be forfeited the 120-day time limit imposed by 18 USC § 924(d) begins to run. As *Misc. Firearms* noted, the government may bring about either an administrative or judicial proceeding within 120 days to satisfy the statute, but no such proceeding was brought within that time limit here.

Because the items were effectively in the possession of the federal government in December of 2024 and no federal forfeiture allegation was made until the indictment in April of 2026, the 120-day time limit imposed by 18 USC § 924(d) is lapsed (by more than a year), and the government is prevented from making a case for forfeiture of the items in question.

## V. CONCLUSION

For the above reasons, this Court recommends that the defendant's motion to dismiss the forfeiture allegation at Docket 21 be GRANTED. IT IS SO RECOMMENDED.

DATED this 14th day of August 2026 at Fairbanks, Alaska.

s/ SCOTT A. ORAVEC

SCOTT A. ORAVEC
United States Magistrate Judge

**United States District Court Judge, the Honorable Ralph R. Beistline, will hear any oral objections to this proposed finding and recommendation on Monday, August 17, 2026, at the previously-scheduled Sentencing hearing.** The parties shall otherwise comply with provisions of Local Magistrate Rule 6(a). The failure to object to a Magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal.[20] The

[20] *McCall v. Andrus*, 628 F.2d 1185, 1187-1189 (9th Cir.), *cert. denied*, 450 U.S. 996 (1981).

Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a Magistrate judge's recommendation.[21] Objections shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment.[22]

[21] *United States v. Howell*, 231 F.3d 615 (9th Cir. 2000).

[22] *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).